**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MELISSA LEACH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-06-684-M |
| ) | |
| THE CITY OF GUYMON, OKLAHOMA, ) | |
| a municipal corporation, and ) | |
| JEREMY HENSON, in his individual ) | |
| capacity, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This case is scheduled for trial on the Court's September, 2007 trial docket.

Before the Court is defendants' Motion for Summary Judgment, filed July 2, 2007. On August 10, 2007, plaintiff filed her response, and on August 21, 2007, defendants filed their reply.[1] Based upon the parties' submissions, the Court makes its determination.

I.   INTRODUCTION

On October 11, 2005, defendant Jeremy Henson ("Henson"), an officer with the Guymon police department, allegedly observed a dog[2] chasing and trying to bite a child riding a bicycle. Henson exited his patrol car and unsuccessfully attempted to catch the dog. Henson then radioed for assistance from the animal control department. Animal Control Officer Uriah Martinez ("ACO

---

[1]In their reply, defendants raise the issue of qualified immunity. Defendants, however, did not raise this issue in their motion for summary judgment. Because this issue was raised for the first time in defendants' reply, the Court will not consider the issue of qualified immunity. *See Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003) (argument raised for first time in reply brief is waived); *Acker v. Burlington N. and Santa Fe Ry. Co.*, 388 F. Supp. 2d 1299, 1302 n.2 (D. Kan. 2005) (declining to consider argument raised for first time in reply).

[2]It was subsequently determined that this dog belonged to plaintiff.

Martinez") arrived and followed the dog for over an hour before shooting it with a tranquilizer dart. The dog, though tranquilized, traveled home, and ACO Martinez followed.

Plaintiff Melissa Leach ("Leach") arrived home at the same time as her injured dog. Leach let the dog into her backyard and ultimately saw that her dog was lying on his side and bleeding. Animal Control Officer Fuentes ("ACO Fuentes") came to Leach's house and knocked on the front door. Leach answered and asked what happened to her dog. ACO Fuentes informed her the dog had been darted but would be okay. Leach believed that someone must have let her dog out of the yard and insisted that ACO Fuentes call a policeman to investigate. ACO Fuentes called dispatch, and Henson responded.

Henson and ACO Fuentes knocked on Leach's front door, and Leach answered. The parties engaged in some conversation[3], and, ultimately, ACO Fuentes requested plaintiff's driver's license.[4] Leach declined to produce her license. Henson then informed Leach that if she did not provide her license to ACO Fuentes, she would be arrested. Leach said no, went back inside her house, and closed the door. Henson then went inside the house and grabbed Leach. A struggle ensued, and, ultimately, Henson, with the help of an officer who had arrived on the scene, handcuffed Leach.[5] Leach was taken outside, placed in a police car, and ultimately taken to the police station.

On June 27, 2006, Leach filed the instant action against defendants alleging violations of her Fourth Amendment rights against unlawful arrest and excessive force. Defendants now move for

---

[3] The parties dispute what was actually said in this initial conversation and the manner in which the words were said.

[4] It is disputed whether ACO Fuentes advised Leach as to why he needed her driver's license.

[5] The parties dispute what actions were taken by Henson and Leach during this struggle, as well as what actions were taken by Henson after Leach was handcuffed and escorted to a police car.

summary judgment as to Leach's claims.

## II.   SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party."  *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

## III.   DISCUSSION

### A.   Unlawful Arrest

Leach asserts that Henson's warrantless arrest of her in her home was unlawful.  Defendants contend that Henson had probable cause to arrest Leach, and, therefore, her arrest was lawful.[6]

---

[6] Defendants never address, in their motion or reply, the issue of the propriety of arresting Leach <u>in her home</u> without a warrant.  Defendants only address whether Henson had probable cause to arrest Leach.

"[W]arrantless felony arrests in the home are prohibited by the Fourth Amendment, absent probable cause and exigent circumstances." *Welsh v. Wisconsin*, 466 U.S. 740, 749 (1984). Further, warrantless arrests in the home are presumptively unreasonable, and "[w]hen the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate." *Id.* at 749-50. Additionally,

> an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made. Moreover, although no exigency is created simply because there is probable cause to believe that a serious crime has been committed . . . application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense . . . has been committed.

*Id.* at 753. Finally, the Supreme Court has noted "that it is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor." *Id.*

Having carefully reviewed the parties' submissions, and viewing the facts and inferences in the light most favorable to Leach, as the Court must at the summary judgment stage, the Court finds that Henson[7] is not entitled to summary judgment as to Leach's unlawful arrest claim. It is undisputed that Henson arrested Leach for permitting her dog to be at large within the city and for obstructing an officer in the performance of his duties, both extremely minor offenses. Further, even

---

[7]As set forth in section III(C) *infra*, the Court finds that defendant The City of Guymon, Oklahoma is entitled to summary judgment as to Leach's claims.

assuming that Henson had probable cause to arrest Leach,[8] the Court finds there exist genuine issues of material fact as to whether any exigent circumstances were present to justify the warrantless arrest of Leach in her home.[9]

Accordingly, the Court finds that Henson's motion for summary judgment should be denied as to Leach's unlawful arrest claim.

B.  Excessive Force

Leach asserts that Henson used excessive force in his allegedly unlawful arrest of her in violation of the Fourth Amendment.

> Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. . . . Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Cortez v. McCauley*, 478 F.3d 1108, 1125 (10th Cir. 2007) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Additionally,

> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive

---

[8] In making its ruling, the Court does not render any opinion as to whether Henson, in fact, had probable cause to arrest Leach.

[9] In fact, the Court would note that defendants have presented very little evidence indicating any exigent circumstances.

> force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts, however, the reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

*Id.* (quoting *Graham*, 490 U.S. at 396-97).

Having carefully reviewed the parties' submissions, the Court finds that Leach has presented sufficient evidence to create a genuine issue of material fact as to whether the amount of force Henson used was reasonable. Specifically, the Court finds that based upon Leach's version of the incident in question, and in light of the minor nature of the crimes at issue, a jury could determine that the force used by Henson was excessive. Accordingly, the Court finds Henson's motion for summary judgment should be denied as to Leach's excessive force claim.

C.  Liability of the City of Guymon

Plaintiff alleges that defendant The City of Guymon, Oklahoma ("Guymon") implicitly authorized, approved, or knowingly acquiesced in the allegedly unconstitutional conduct of Henson and that Guymon's municipal policy, custom, or practice caused Leach's constitutional rights to be violated.

A plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal policy, custom, or practice that caused the plaintiff's injury. *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 403 (1997). Further,

> it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Id.* at 404 (emphasis in original). Finally, "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* at 405.

Having carefully reviewed the parties' submissions, and viewing the facts and inferences in the light most favorable to Leach, the Court finds that Leach has not presented sufficient evidence of any policy, custom, or practice to impose liability on Guymon. Leach relies upon the fact that Henson was not disciplined for two prior incidents – one involving an allegedly improper search by Henson, and the other involving a request made by Henson to arrest an individual which was ultimately denied – to establish a policy or custom of Guymon directly causing Leach's injury. The Court finds that these two incidents do not rise to the level of a policy or custom of Guymon sufficient to impose liability under § 1983. *See id.* at 403-404 (custom is based upon relevant practice that is so widespread as to have force of law). Further, the Court finds that even if these two incidents could somehow constitute a policy or custom of Guymon, Leach has not presented sufficient evidence to create a genuine issue of fact as to whether this "policy or custom" directly caused the deprivation of Leach's constitutional rights.

Accordingly, the Court finds that Guymon is entitled to summary judgment as to Leach's claims.

IV.     CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART defendants' Motion for Summary Judgment [docket no. 21] as follows:

(A)     The Court GRANTS the motion for summary judgment as to Leach's claims against Guymon, and

(B)     The Court DENIES the motion for summary judgment as to Leach's claims against Henson.

**IT IS SO ORDERED this 27th day of August, 2007.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE